**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MONICA S., | ) | |
| | ) | |
| Plaintiff, | ) | No. 25-cv-6341 |
| | ) | |
| v. | ) | Magistrate Judge Keri L. Holleb Hotaling |
| | ) | |
| FRANK BISIGNANO, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Monica S.[1] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") ("SSA") denying her disability benefits. The parties have filed cross motions for summary judgment.[2] As detailed below, Plaintiff's motion for summary judgment [Dkt. 12] is DENIED and Defendant's motion for summary judgment [Dkt. 15] is GRANTED. The final decision of the Commissioner is affirmed.

1.      **Procedural History**

On July 30, 2022, Plaintiff protectively filed an application for supplemental security income, alleging disability beginning June 1, 2022. [Administrative Record ("R.") 17.] The claim was denied initially and on reconsideration. *Id*. On June 10, 2024, after an Administrative Hearing, an Administrative Law Judge ("ALJ") found Plaintiff was not disabled. [R. 17-31.] The Appeals Council denied review on April 7, 2025 [R. 1], rendering the ALJ's June 10, 2024 decision the

---

[1]     In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name.

[2]     Plaintiff has filed an "Opening Brief" seeking judicial review of the final decision of the Commissioner of Social Security [Dkt. 12], which the Court construes as a motion for summary judgment.

1

final decision of the Commissioner. 20 C.F.R. §404.981. On June 6, 2025, Plaintiff filed this action seeking review of the Commissioner's decision. [Dkt. 1.]

**2.      The ALJ's Decision**

In his June 10, 2024 decision, the ALJ analyzed Plaintiff's claim following the SSA's usual five-step evaluation process to determine whether Plaintiff was disabled. [R. 17-31.] At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 30, 2022, the application date. [R. 19-20.] At Step Two, the ALJ found Plaintiff had the severe impairments of diverticulitis/diverticulosis; adnexal cysts; pelvic inflammatory disease; obesity; and generalized anxiety disorder. [R. 20.] At Step Three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1 (20 CFR 416.920(d), 416.925 and 416.926). *Id*. In determining Plaintiff's mental impairments, the ALJ also analyzed the so-called Paragraph B and Paragraph C criteria for assessing mental impairments. The ALJ found Plaintiff had (i) no limitation in understanding, remembering or applying information, (ii) a mild limitation in interacting with others, (iii) a mild limitation in concentrating, persisting or maintaining pace, and (iv) no limitation in adapting or managing oneself. [R. 21-22.] The ALJ further found the evidence of record failed to establish the presence of Paragraph C criteria. [R. 23.]

Before Step Four, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform medium work with the following limitations:

> can only occasionally climb ladders, ropes, and scaffolds; frequently climb ramps and stairs; occasionally stoop; frequently crawl; should avoid concentrated exposure to hazards such as moving machinery and unprotected heights; have only occasional interaction with coworkers, supervisors, and the public; and would need two additional five minute unscheduled breaks in addition to normal breaks and lunch periods.

[R. 23.]

At Step Four, the ALJ concluded Plaintiff was unable to perform any past relevant work. [R. 29.] At Step Five, after considering the Plaintiff's age, education, work experience and RFC, the ALJ found Plaintiff capable of performing other jobs existing in significant numbers in the national economy. [R. 30.] Specifically, the ALJ determined Plaintiff would be able to perform the requirements of linen room attendant (DOT# 222.387-030, SVP 2, medium), sweeper, cleaner, industrial (DOT# 389.683-010, SVP 2, medium), and hand packager (DOT# 920.587-018, SVP 2, medium). [R. 30-31.] Accordingly, the ALJ found Plaintiff was not disabled from the application date through the date of the decision. *Id*.

### 3. Social Security Regulations and Standard of Review

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. 20 C.F.R. § 404.131; *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017). In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018); *Hess v. O'Malley*, 92 F.4th 671, 676 (7th Cir. 2024); *see also* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citations omitted). Even where "reasonable minds could differ" or an alternative position is also supported by substantial evidence, the ALJ's judgment must be affirmed if supported by substantial evidence. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). This "lax" standard is satisfied when the ALJ "minimally articulate[s] his or her justification for rejecting or accepting specific evidence of a disability." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (internal signals omitted) (citing *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004)). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build[] an accurate and

3

logical bridge from the evidence to [their] conclusion." *Hess*, 92 F.4th at 676; *Lincoln v. Bisignano*, No. 24-cv-2668, 2026 WL 1097737, at *2 (7th Cir. 2026). Finally, while reviewing the Commissioner's decision, the Court does not second-guess the ALJ's judgment – the Court may not "substitute [its] own judgment for that of the Commissioner [,] reconsider facts, reweigh the evidence, resolve conflicts in the evidence, or decide questions of credibility." *Fitschen v. Kijakazi*, 86 F.4th 797, 802 (7th Cir. 2023).

### 4.    Discussion

Plaintiff contends the ALJ committed reversible error by failing to adequately explain his rejection of consultative examining psychologist Dr. Tracy Tilton's opinion. [Dkt. 12 at 7-15.] Dr. Tilton assessed Plaintiff's generalized anxiety disorder and opined that Plaintiff "appeared unable to adequately function at the level that being employed would entail, [she does] not appear to have the necessary skills to function adequately on a day to day [sic] basis at home or in the community, and [she] would benefit from financial assistance." [R. 28.] For the reasons discussed below, the Court finds the ALJ properly evaluated the persuasiveness of and adequately explained his rejection of Dr. Tilton's opinion.

In evaluating a medical opinion, an ALJ is required to articulate how persuasive they found the medical opinion and evaluate the supportability and consistency (among other factors) of the opinion with the record. 20 C.F.R. § 404.1520c(b)(2). Supportability refers to "the objective medical evidence and supporting explanations presented by a medical source" to support their opinion. 20 C.F.R. § 404.1520c(c)(1). Consistency refers to the consistency of a "medical opinion(s)…with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2).  The ALJ found Dr. Tilton's opinions unpersuasive as they were inconsistent with the medical exams the ALJ spent significant time detailing and not fully supported by the findings during Dr. Tilton's exam. *Id*.

4

The ALJ weighed the evidence of record indicating mental deficits against evidence of normal findings from Dr. Tilton's examination and found Dr. Tilton's opinion was not fully supported by her own examination. [R. 28.] Dr. Tilton's opinions finding Plaintiff unable to function at employment level and lacking the necessary skills for day-to-day functionality necessarily address the abnormal findings from her examination. However, the ALJ found this opinion not fully supported because Dr. Tilton's examination also had significant "normal" findings. [R. 28-29.] Dr. Tilton noted Plaintiff "was cooperative," her "speech was within normal limits with no abnormal psychomotor activity," Plaintiff "exhibited linear and goal-directed thought processes, normal thought content devoid of delusions and paranoia," while "reporting a 'fine' mood," and Plaintiff was "able to perform simple calculations, and able to recall items after a short delay." [R. 28-29 (*citing* R. 614-615).] As permitted, the ALJ weighed the evidence and found the opinion lacking full support. 20 C.F.R. Part 404, Subpart P, App'x 1 § 12.00(C)(2)(c) (listing "results of…mental status examinations" as evidence ALJs will consider in evaluating a claimant's mental disorder); *Weber v. Kijakazi*, No. 20-cv-2990, 2021 WL 3671235, at *4 (7th Cir. 2021) ("Weighing conflicting evidence is exactly what the ALJ was required to do[.]"). ALJs are "subject to only the most minimal of articulation requirements" and the Seventh Circuit has repeatedly emphasized that all the Court requires is "that ALJs provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1053-1054 (7th Cir. 2024) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). The Court finds the ALJ met this standard in addressing the supportability factor of Dr. Tilton's opinion.

Next, the ALJ found Dr. Tilton's opinion inconsistent with the "often normal presentation" in Plaintiff's medical exams. [R. 28.] The ALJ highlighted several medical exams and ER visits

5

between November 2021 through October 2022 which generally found Plaintiff to be "alert, normally oriented, with a normal mood, behavior, and thought content." *Id*. Additionally, the ALJ noted inconsistencies with Dr. Liana G. Palacci's findings following an internal medicine consultative examination which was notably performed only five days after Dr. Tilton's exam. [R. 29.] In contrast to Dr. Tilton's findings, Dr. Palacci found Plaintiff "alert, oriented, with excellent cooperation and effort, displayed no problems with recall, and could perform simple arithmetic including addition, subtraction, and multiplication…displayed a normal affect, and [] her memory, appearance, behavior, and ability to relate during the examination were all normal". *Id*. While Plaintiff takes issue with the ALJ finding inconsistencies between a psychologist's and an internist's exams, flagging that one is a specialist [Dkt. 12 at 13-14], it is apparent the ALJ was merely considering the discrepancy between the two mental status examinations which occurred only days apart. [R. 29]; 20 C.F.R. Part 404, Subpart P, App'x 1 § 12.00(C)(2)(c). As above, the ALJ is permitted to weigh conflicting evidence and appropriately did so here in evaluating the consistency of Dr. Tilton's opinion with the evidence of record. *Weber*, 2021 WL 3671235, at *4.

The ALJ also found Dr. Tilton's opinion inconsistent with Plaintiff's limited treatment for behavioral health issues, even while acknowledging Plaintiff's allegations of difficulty finding treatment. [R. 28.] Plaintiff concedes the record lacks evidence of ongoing mental health treatment. [Dkt. 12 at 10.] An ALJ is permitted to consider several factors (including treatment) in evaluating the severity of an impairment and the methods used to alleviate symptoms and appropriately considered Plaintiff's lack of mental health treatment here. 20 C.F.R. § 404.1529(c)(3); Social Security Ruling (SSR) 16-3p ("We will consider an individual's attempts to seek medical treatment for symptoms and to follow treatment once it is prescribed when evaluating whether symptom intensity and persistence affect the ability to perform work-related activities[.]").

Plaintiff's counsel claims Plaintiff appears to be in denial of her serious mental illness and argues that individuals with "severe mental health issues may have poor judgment and may not make responsible choices about treatment."[3] [Dkt. 12 at 11.] Citing the Seventh Circuit's decision in *Mandrell v. Kijakazi*, 25 F.4th 514, 518 (7th Cir. 2022), counsel suggests individuals with mental illnesses should not "be expected to behave rationally with respect to counseling appointments[.]" *Id.* However, in *Mandrell*, the Seventh Circuit found the ALJ's decision lacking an explanation as to how Plaintiff, who suffered from PTSD as a result of being raped (and who specifically testified to difficulties getting out and interacting with others), should be expected to behave rationally with respect to counseling appointments. *Mandrell*, 25 F.4th at 518. Unlike in *Mandrell*, here, the ALJ noted that only Dr. Tilton indicated some difficulty with interacting socially, but the other evidence of record generally suggested an ability to interact with others.[4] [R. 21-22; 28.]

Lastly, Plaintiff questions the ALJ's finding that Plaintiff's reported activities were inconsistent. [Dkt. 12 at 14.] While the ALJ did not specifically reference Plaintiff's reported activities in finding Dr. Tilton's opinion to be inconsistent, the ALJ listed it as one of the reasons for his finding that Plaintiff's mental impairments cause no greater limitations than those that are included in the RFC. [R. 29.] Plaintiff lists several parts of the record as evidence that Plaintiff's reported activities were not inconsistent and which the ALJ did not explicitly discuss. [Dkt. 12 at 14-15.] However, an ALJ "need not address every piece or category of evidence[.]" *Warnell*, 97

---

[3] Plaintiff's Counsel further claims Plaintiff suffers from anosognosia, a "condition where your brain can't recognize one or more other health conditions you have." [Dkt. 12 at 11-12.] But counsel concedes neither this term nor diagnosis appears in the record. *Id.* at 12. The Court's review is limited to the administrative record. *Mathews v. Weber,* 423 U.S. 261, 270 (1976) ("The magistrate is directed to conduct a preliminary review of a closed administrative record—closed because under [] 42 U.S.C. § 405(g), neither party may put any additional evidence before the district court."). Accordingly, the Court will not address this argument.

[4] Despite finding Dr. Tilton's opinion unpersuasive, the ALJ still accommodated Plaintiff in the RFC by limiting Plaintiff to only occasional interactions with coworkers, supervisors, and the public. [R. 23.]

F.4th at 1053. The ALJ must merely "build[] an accurate and logical bridge from the evidence to [their] conclusion." *Hess*, 92 F.4th at 676; *Lincoln*, 2026 WL 1097737, at *2. The ALJ did so here by discussing different parts of the record where Plaintiff reported her ability to engage in activities of daily living, handle her finances, interact with others, and respond appropriately to supervisors at work against other parts of the record where Plaintiff reported issues with completing tasks and handling stress, despite noting she can follow instructions and that she does handle stress and changes to her routine well. [R. 25.] The ALJ noted the nature of the activities was not only internally inconsistent but was also inconsistent with Plaintiff's alleged pain and symptoms. *Id*. The ALJ formed his conclusion after "[c]onsidering the totality of the evidence[,]" including the inconsistencies between Dr. Tilton's and Dr. Palacci's exams, Plaintiff's treatment history, her reported activities, and her limited behavioral health treatment. [R. 29.]

In sum, the Court finds the ALJ properly evaluated Dr. Tilton's opinion, adequately addressed the supportability and consistency of Dr. Tilton's opinion with the record, and ultimately finds there is substantial evidence supporting the ALJ's determination that Dr. Tilton's opinion was unpersuasive.

### 5.     Conclusion

For the foregoing reasons, the Court declines to remand this matter. Plaintiff's motion for summary judgment [Dkt. 12] is DENIED and Defendant's motion for summary judgment [Dkt. 15] is GRANTED. The final decision of the Commissioner is affirmed.

**ENTERED: June 16, 2026**

Hon. Keri L. Holleb Hotaling,
United States Magistrate Judge

8